Appendix A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
_____ DIVISION

_Natasha Lubin_                              §
                                             §
versus                                       §            CIVIL ACTION NO. _____
                                             §
_U.S Dept of Treasury._                      §
_Department of Treasury_                      §
_office of the Comptroller of_               §
_the currency_

EMPLOYMENT DISCRIMINATION COMPLAINT

    1.    This action is brought under Title VII of the Civil Rights Act of 1964 for employment

discrimination. Jurisdiction is conferred by Title 42 United States Code, Section § 2000e-5.

    2.    The Plaintiff is:    _Natasha · Lubin_

        Address:    _2400 Spring Rain Dr. apt 237_

                    _Spring  TX  77379_

        County of Residence:    _Harris_

    3.    The defendant is:    _U.S. Dept of Treasury._

        Address:    _Mariam G Harvey, Director, EO Programs._

                    _1500 Pennsylvania Ave NW_
_Washington, DC 20220_

☐    Check here if there are additional defendants. List them on a separate sheet of paper with

        their complete addresses.

    4.    The plaintiff has attached to this complaint a copy of the charges filed on _1/31/2017 ·_

with the Equal Opportunity Commission.

    5.    On the date of _10/25/2018_, the plaintiff received a Notice of Right to Sue

letter issued by the Equal Employment Opportunity Commission; a copy is attached.

6.  Because of the plaintiff's:

    (a)    ☐    race

    (b)    ☑    color

    (c)    ☐    sex

    (d)    ☐    religion

    (e)    ☑    national orgin,

the defendant has:

    (a)    ☐    failed to employ the plaintiff

    (b)    ☑    terminated the plaintiff's employment

    (c)    ☐    failed to promote the plaintiff

    (d)    ☐    other: _____

_____

_____

7.  When and how the defendant has discriminated against the plaintiff:

_____ *See appeal letter enclosed.* _____

_____

_____

8.  The plaintiff requests that the defendant be ordered:

    (a)    ☐    to stop discriminating against the plaintiff

    (b)    ☐    to employ the plaintiff

    (c)    ☑    to re-employ the plaintiff

    (d)    ☐    to promote the plaintiff

(e)  ☑  to  *Make whole Relief*

*punitive damage / Compensatory damages.*

*Supervisor be reprimanded.* and that;

(f)  ☐  the Court grant other relief, including injunctions, damages, costs and

attorney's fees.

_____
(Signature of Plaintiff)

Address:  *2400 Spring Rain Drive*

*Spring, TX  77379*

Telephone:  *786 447-7230*

Appendix B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
_____ DIVISION

Natasha Lubin

versus

Dept of Treasury
Ofice of Comptroller
Currency

§
§
§
§
§
§
§
§

CIVIL ACTION NO. _____

ORIGINAL COMPLAINT



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Office of Federal Operations**
**P.O. Box 77960**
**Washington, DC 20013**

Natasha Lubin, a/k/a
Hyo L.,[1]
Complainant,

v.

Steven T. Mnuchin,
Secretary,
Department of the Treasury
(Office of the Comptroller of the Currency),
Agency.

Appeal No. 0120171046

Agency No. OCC-16-0499-F

DECISION

On January 31, 2017, Complainant filed an appeal with the Equal Employment Opportunity Commission (EEOC or Commission), pursuant to 29 C.F.R. § 1614.403(a), from the Agency's January 26, 2017, final decision concerning her equal employment opportunity (EEO) complaint alleging employment discrimination in violation of Title VII of the Civil Rights Act of 1964 (Title VII), as amended, 42 U.S.C. § 2000e et seq. For the following reasons, the Commission AFFIRMS the Agency's final decision (FAD) which found that Complainant did not demonstrate that she was subjected to discrimination as alleged.

ISSUE PRESENTED

The issue presented is whether the Agency's FAD erred in finding that Complainant's termination was not due to discrimination or that she was not subjected to a hostile work environment.

BACKGROUND

At the time of events giving rise to this complaint, Complainant worked as a probationary Assistant National Bank Examiner (ANBE), at the Agency's Office of the Comptroller of the Currency facility in Longview, Texas. Complainant maintained that the Training Team Leader (TTL), made comments about her skin color, her nationality, and her possibly dating and having a biracial child

---

[1] This case has been randomly assigned a pseudonym which will replace Complainant's name when the decision is published to non-parties and the Commission's website.

with a coworker. Specifically, Complainant maintained that the TTL made derogatory statements including that Complainant did not look like she was from Miami but looked like she was from Africa due to her dark skin tone. Also, the TTL and the trainees poked fun at Complainant during the training sessions, and the TTL suggested that Complainant should have a baby with another white male (trainee) so that they could make beautiful babies. The TTL also stated that men do not like "dark chocolate" women.

Complainant maintained that she was subjected to reprisal, harassment, and ultimately removed based on her protected bases. Complainant was removed four months after the start of her employment. The Agency maintained that she was removed because of her poor work performance. Specifically, the Agency maintained that Complainant was unable to follow directions, unreliable in finishing assignments, disregarded advice, and lacked the interpersonal and organizational skills necessary to be a successful ANBE.

On June 24, 2016, Complainant filed an EEO complaint alleging that the Agency discriminated against her on the bases of national origin (Caribbean), sex (female), color (dark complexion), and reprisal for prior protected EEO activity when:

1.   Beginning on January 24, 2016, and continuing through her termination on May 24, 2016, the Agency subjected her to a hostile work environment, including but not limited to comments made by the TTL regarding her appearance, skin color, sex, and national origin, and other comments suggesting Complainant engage in sexual activity with a male trainee; false accusations regarding work performed; and exclusion from lunch invitations; and

2.   On May 24, 2016, she was terminated during her probationary period.

At the conclusion of the investigation, the Agency provided Complainant with a copy of the report of investigation and notice of her right to request a hearing before an Equal Employment Opportunity Commission Administrative Judge. In accordance with Complainant's request, the Agency issued a final decision pursuant to 29 C.F.R. § 1614.110(b). The decision concluded that Complainant failed to prove that the Agency subjected her to discrimination as alleged.

The Agency maintained that Complainant did not establish her reprisal claim because the TTL was not aware of any prior EEO activity. Notwithstanding, the Agency indicated that assuming, arguendo, Complainant established a prima facie case of discrimination as to all her bases, the Agency articulated legitimate, nondiscriminatory reasons for its actions, namely that the record showed that Complainant had been given feedback, support, examples and suggestions for improvement via Assignment Evaluations Forms dated March 3, April 14, and May 19, 2016. This was in addition to a performance counseling on March 10, 2016. The Agency maintained that Complainant did not improve. Management noted additional examples of Complainant work behavior, which included sleeping during training, and talking to a banker alone, when she and her training class had specifically been instructed not to do so. On May 20, 2016, Complainant was issued a Notice of Termination.

Further, the Agency noted that witness testimony did not support Complainant's contentions. Witnesses indicated that Complainant was always invited to join conversations, there was no mention of her skin color, and no one ever heard the TTL say that men did not like "dark chocolate." Also, the comments about the biracial child were related to the TTL and not Complainant. The TTL acknowledged that she asked Complainant about her national origin because Complainant, like the TTL, had an accent. The Agency found that Complainant did not demonstrate that the Agency's articulated reasons were pretext for discrimination or that discriminatory animus was involved in her termination.

## CONTENTIONS ON APPEAL

On appeal, Complainant contends, among other things, that she was subjected to severe and pervasive treatment on a daily basis with hurtful/unwelcome comments regarding her skin tone, accent, and national origin. Complainant also contends that the TTL was aware that she had reported disparate treatment to Human Resources, her second-line supervisor and Union Representative. Complainant maintains that the TTL retaliated against her after she discovered that she spoke to her second-line supervisor. As additional proof of retaliation, Complainant contends that she was terminated two days after her Union Representative submitted her request for a transfer. Moreover, she maintains that her poor ratings were due to the TTL giving her incorrect information. Finally, Complainant maintains that the witnesses did not support her, and indicated that they did not recall events, because they still worked in the unit.

In response, the Agency contends, among other things, that concerning Complainant's allegations of a hostile work environment/harassment, the FAD correctly noted that Complainant failed to present any persuasive evidence to support her claims and therefore she did not prove that the alleged harassing incidents occurred or that she was subjected to any unwelcome conduct based on her protected bases.

Regarding Complainant's termination, the Agency found that its FAD correctly found that the weight of the record evidence supported the conclusion that the Agency terminated Complainant during her probationary period due to poor performance. The Agency found that Complainant did not establish any defect in the disparate treatment analysis contained in the FAD. Therefore, the Agency requests that its FAD be affirmed.

## ANALYSIS AND FINDINGS

*Standard of Review*

As this is an appeal from a decision issued without a hearing, pursuant to 29 C.F.R. § 1614.110(b), the Agency's decision is subject to de novo review by the Commission. 29 C.F.R. § 1614.405(a). See Equal Employment Opportunity Management Directive for 29 C.F.R. Part 1614, at Chapter 9, § VI.A. (Aug. 5, 2015) (explaining that the de novo standard of review "requires that the Commission examine the record without regard to the factual and legal determinations of the previous decision maker," and that EEOC "review the documents, statements, and testimony of

record, including any timely and relevant submissions of the parties, and . . . issue its decision based on the Commission's own assessment of the record and its interpretation of the law").

*Disparate Treatment - Termination*

Based on a thorough review of the record and the contentions on appeal, including those not specifically addressed herein, we find that even if we assume that Complainant established a prima facie case of discrimination as to all her protected bases, we find that the Agency articulated a legitimate nondiscriminatory reason for Complainant's termination during her probationary period, i.e., Complainant was terminated during her probationary period due to poor work performance. The Agency provided numerous examples of Complainant failing to follow instructions and to complete assignments. Witnesses recalled Complainant sleeping through training and listening to headphones during a bank exam despite being counseled on numerous occasions not to do so. Complainant was also instructed to not speak with the banking staff alone, yet she did so anyway. As a result, of Complainant's poor work habits, management decided to terminate her.[2] We find that Complainant did not demonstrate that the Agency's reasons were pretext for discrimination.

*Harassment*

Harassment of an employee that would not occur but for the employee's race, color, sex, or prior EEO activity is unlawful, if it is sufficiently patterned or pervasive. Wibstad v. U.S. Postal Serv., EEOC Appeal No. 01972699 (Aug. 14, 1998) (citing McKinney v. Dole, 765 F.2d 1129, 1138-39 (D.C. Cir. 1985)); EEOC Enforcement Guidance on Harris v. Forklift Systems, Inc. at 3, 9 (Mar. 8, 1994). In determining that a working environment is hostile, factors to consider are the frequency of the alleged discriminatory conduct, its severity, whether it is physically threatening or humiliating, and if it unreasonably interferes with an employee's work performance. See Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993); Enforcement Guidance at 6. The Supreme Court has stated that: "Conduct that is not severe or pervasive enough to create an objectively hostile work environment - an environment that a reasonable person would find hostile or abusive - is beyond Title VII's purview." Harris, 510 U.S. at 22 (1993).

To establish a claim of harassment, Complainant must show that: (1) she belongs to a statutorily protected class; (2) that she was subjected to harassment in the form of unwelcome verbal or physical conduct involving the protected class; (3) the harassment complained of was based on her statutorily protected class; (4) the harassment affected a term or condition of employment and/or had the purpose or effect of unreasonably interfering with the work environment and/or creating

---

[2] Where a complainant is a probationary employee, we have long held that he or she is subject to retention, advancement, or termination at the discretion of an agency so long as these decisions are not based on a protected category. Kaftanic v. U.S. Postal Serv., EEOC Appeal No. 01882895 (Dec. 27, 1988) (citing Arnett v. Kennedy, 416 U.S. 134, 152 (1974)).

an intimidating, hostile, or offensive work environment; and (5) there is a basis for imputing liability to the employer. See Henson v. City of Dundee, 682 F.2d 897 (11th Cir. 1982).

With respect to element (5), an employer is subject to vicarious liability for harassment when it is created by a supervisor with immediate (or successively higher) authority over the employee. See Burlington Industries, Inc., v. Ellerth, 524 U.S. 742, 118 s. Ct. 2257, 2270 (1998); Faragher v. City of Boca Raton, 524 U.S. 775, 118 S. Ct. 2275, 2292-93 (1998). However, where the harassment does not result in a tangible employment action the agency can raise an affirmative defense, which is subject to proof by a preponderance of the evidence, by demonstrating: (1) that it exercised reasonable care to prevent and correct promptly any harassing behavior; and (2) that complainant unreasonably failed to take advantage of any preventive or corrective opportunities provided by the agency or to avoid harm otherwise. See Burlington Industries, supra; Faragher, supra; Enforcement Guidance: Vicarious Liability for Unlawful Harassment by Supervisors, EEOC Notice No. 915.002 (June 18, 1999). This defense is not available when the harassment results in a tangible employment action (e.g., a discharge, demotion, or undesirable reassignment) being taken against the employee. By way of contrast, in the case of co-worker harassment, an agency is responsible for acts of harassment in the workplace where the agency (or its agents) knew or should have known of the conduct, unless it can show that it took immediate and appropriate corrective action. Id.

Upon review, we find that the preponderance of the evidence and the totality of the circumstances do not indicate that Complainant established her claim that she was subjected to a hostile work environment based on sex, color, national origin, or reprisal. With regard to Complainant's claim of hostile work environment, we make the following determinations:

I.       Elements 1, 2 and 3 -- Unwelcome Conduct based on Sex, Color, National Origin, and Reprisal

Regarding element 1, the record is undisputed that Complainant is a female with a dark complexion from the Caribbean, and that she has engaged in prior EEO activity. Therefore, she is a member of four statutorily protected classes. We note that Complainant's first allegation of harassment occurred on March 10, 2016, which was the day that she received a poor review of her work performance. Regarding elements 2 and 3, we find no persuasive evidence that the TTL made the comments that Complainant alleges were made by her. In fact, the TTL denied making inappropriate comments and specifically disavowed ever making a comment about men not liking "dark chocolate." The record indicates that the witnesses also did not support Complainant's contention that these comments occurred. To the extent that Complainant believes that the witnesses were afraid to testify truthfully on her behalf, we note that she was given the opportunity to have a hearing before an EEOC Administrative Judge who could have made credibility determinations after the witnesses testified under oath. Because Complainant did not want a hearing, we can only decide this matter based on the weight of the evidence before us.

As there is no evidence to support Complainant's assertions that these statements were made to her, we find Complainant failed to prove that the harassing incidents occurred or that she was subjected to any unwelcome conduct based on her protected bases. We further find that Complainant did not demonstrate that the alleged conduct she complained of was so severe or pervasive, as a matter of law, to establish a claim of hostile work environment harassment. The EEO laws are not a civility code. Rather, they forbid "only behavior so objectively offensive as to alter the conditions of the victim's employment." Oncale v. Sundowner Offshore Serv., Inc., 523 U.S. 75, 81 (1998). As Complainant did not establish elements 2, 3, or 4, we find that she did not demonstrate that she was subjected to harassment.

## CONCLUSION

Accordingly, we AFFIRM the Agency's FAD which found that Complainant did not demonstrate that she was subjected to discrimination and harassment as she alleged.

## STATEMENT OF RIGHTS - ON APPEAL
## RECONSIDERATION (M0617)

The Commission may, in its discretion, reconsider the decision in this case if the Complainant or the Agency submits a written request containing arguments or evidence which tend to establish that:

    1.    The appellate decision involved a clearly erroneous interpretation of material fact or law; or

    2.    The appellate decision will have a substantial impact on the policies, practices, or operations of the Agency.

Requests to reconsider, with supporting statement or brief, must be filed with the Office of Federal Operations (OFO) **within thirty (30) calendar days** of receipt of this decision. A party shall have **twenty (20) calendar days** of receipt of another party's timely request for reconsideration in which to submit a brief or statement in opposition. See 29 C.F.R. § 1614.405; Equal Employment Opportunity Management Directive for 29 C.F.R. Part 1614 (EEO MD-110), at Chap. 9 § VII.B (Aug. 5, 2015). All requests and arguments must be submitted to the Director, Office of Federal Operations, Equal Employment Opportunity Commission. Complainant's request may be submitted via regular mail to P.O. Box 77960, Washington, DC 20013, or by certified mail to 131 M Street, NE, Washington, DC 20507. In the absence of a legible postmark, the request to reconsider shall be deemed timely filed if it is received by mail within five days of the expiration of the applicable filing period. See 29 C.F.R. § 1614.604. The agency's request must be submitted in digital format via the EEOC's Federal Sector EEO Portal (FedSEP). See 29 C.F.R. § 1614.403(g). The request or opposition must also include proof of service on the other party.

0120171046

Failure to file within the time period will result in dismissal of your request for reconsideration as untimely, unless extenuating circumstances prevented the timely filing of the request. Any supporting documentation must be submitted with your request for reconsideration. The Commission will consider requests for reconsideration filed after the deadline only in very limited circumstances. See 29 C.F.R. § 1614.604(c).

## COMPLAINANT'S RIGHT TO FILE A CIVIL ACTION (S0610)

You have the right to file a civil action in an appropriate United States District Court **within ninety (90) calendar days** from the date that you receive this decision. If you file a civil action, you must name as the defendant in the complaint the person who is the official Agency head or department head, identifying that person by his or her full name and official title. Failure to do so may result in the dismissal of your case in court. "Agency" or "department" means the national organization, and not the local office, facility or department in which you work. If you file a request to reconsider and also file a civil action, **filing a civil action will terminate the administrative processing of your complaint**.

## RIGHT TO REQUEST COUNSEL (Z0815)

If you want to file a civil action but cannot pay the fees, costs, or security to do so, you may request permission from the court to proceed with the civil action without paying these fees or costs. Similarly, if you cannot afford an attorney to represent you in the civil action, you may request the court to appoint an attorney for you. **You must submit the requests for waiver of court costs or appointment of an attorney directly to the court, not the Commission.** The court has the sole discretion to grant or deny these types of requests. Such requests do not alter the time limits for filing a civil action (please read the paragraph titled Complainant's Right to File a Civil Action for the specific time limits).

FOR THE COMMISSION:


Carlton M. Hadden, Director
Office of Federal Operations


October 18, 2018
Date

8                                                    0120171046

## CERTIFICATE OF MAILING

**For timeliness purposes, the Commission will presume that this decision was received within five (5) calendar days after it was mailed.** I certify that this decision was mailed to the following recipients on the date below:

Natasha Lubin
2400 Spring Rain Drive
Apt. 237
Spring, TX 77379

Mariam G. Harvey, Director, EO Programs
Department of the Treasury
Office of Civil Rights and Diversity
1500 Pennsylvania Avenue NW
Washington DC 20220

October 18, 2018
Date

Compliance and Control Division

Natasha Lubin v. Steven T. Munchin US Dept of Treasury (Office of the Comptroller of the Currency), Agency

Director, OCRD
1500 Pennsylvania Ave NW
Washington, DC 20220
Agency # OCC-16-0499-F

Office of Federal Operations EEOC
One Noma Station
131 M Street, NE  Ste 5SW12G
Washington DC 20507
Agency No. OCC-16-0499-F
Appeal No. 0120171046

### Appellant's brief in Opposition to Agency's brief statement.

According to the applicable law of disparate Treatment, I established a prima facie case by demonstrating that I was subjected to an adverse employment action under circumstances that would support an inference of discrimination. Disparate treatment was based on skin color (only dark skinned), national origin (Caribbean accent), gender (only dark skinned Haitian African American female in the office) , and retaliation, and harassment, prior protected activity (reporting disparate treatment to HR, RMO, and Union Rep)

Harassment.

I was subjected to conduct that was severe and pervasive that a reasonable person in my position would have found the conduct to be hostile and abusive. The verbal abusive conduct was taken because of a protected activity, skin color, gender, and national origin. Ms. Murriel (My supervisor) harassed me daily with hurtful/unwelcome comments regarding my skin tone (dark skin), accent, and national origin. Ms. Murriel made derogatory statements such as stating that I don't look like I am from Miami, I look like I'm from Africa due to my skin tone (dark skin). Also, Ms. Murriel and the trainees poke fun at me during the training sessions. Ms. Murriel stated to me that I should have a baby with another white male (trainee) so I can make beautiful babies. In addition, she said that men don't like dark chocolate women.  Because I do not have access to my email, I cannot forward the harassing emails Murriel would send to me. Ms. Murriel knew I contacted the Union Representative because she saw the email I printed out regarding the discrimination I was subjected too. I printed the email I sent to the Union Representative and Paula gave me the printout. She had full knowledge that I contacted the Union Representative on March 10, 2016.

Natasha Lubin v. Steven T. Munchin US Dept of Treasury (Office of the Comptroller of the Currency), Agency

• • •

Retaliation.

I contacted human resource, RMO, and the Union Representative to report disparate treatment including the disparaging comments that Paula would say to me on 03/10/2016. All this was done before I received my 1st evaluation. Additionally, I completed all my work before the deadline. (Please review evaulation report) It does not state that my work was poor and incomplete. The union representative said she spoke to human resources (Riley) several times regarding my situation but human resource did not want to go over the RMO (Terry Richter). Terry Richter, HR, several trainees, and the Union Representative knew of the discrimination I was subjected too because I told them. As indicated in the testimonies from the witnesses Blake Provost and Sam Gaskamp, Paula changed after I spoke to Terry Richter. This is obvious that she did not like the fact that I reported her treatment to Terry Richter so there is basis for retaliation based on the aforementioned. According to the trainee's testimony, Paula felt disrespected that I spoke to Terry Richer behind closed doors so she retaliated against me as a result. Management was aware of my protected activity because I told them how Paula treated me a month after I began employment. The adverse treatment continued/increased because I reported it to management. The treatment was due to my skin color, national origin, and protected activity. I've stated this in the complaint but it was ignored by the US dept. of Treasury. I was terminated two days after the Union Representative submit a transfer request to Ms. Riley (HR). The termination was based on the transfer request not my work performance. Almost everyday Paula was at Terry's office to try to get me fired. As indicated in the witness testimony, I reported discrimination to Michael Anderson, Blake Provost, Terry Richter, Jessie Riley, and the Union Representative after being employed for a month. I am the only black Caribbean female at the field office with an accent. I finished all my assignments on time and was giving wrong information by my team lead. No one assess the team lead performance evaluations to make sure it's accurately reflected. I asked Terry Richter to compare the evaluation with the actual work and he declined. Also, Terry Richter said I was terminated due to interpersonal relationship with Paula Murriel. He never mentioned due to my work because I showed him proof how Paula tried to sabotage my work by lying on the evaluation. Paula knew about the reprisal because she said to me verbatim whatever I'am doing it won't work because the trainers never get in trouble. She stared at me and started laughing out loud.

Natasha Lubin v. Steven T. Munchin US Dept of Treasury (Office of the Comptroller of the Currency), Agency

• • •

Additionally, Terry Richter saw several letters to the union representative including the transfer request. The union representative said that human resource spoke to Terry Richter regarding me in April and he refuse to acknowledge or resolve the complaint. Management knew of the protective activity because not only did I tell him directly but human resources had a conversation with him. I was immediately terminated after the union representative submit transfer request to human resource by email, so therefore they knew of the protected activity before terminating me. No one can work in such hostile conditions and perform to their full potential especially if the team lead is giving you false information, criticizing, and hurting you because you look, act, and speak differently. I have indicated all the negative discriminatory comments and suggestion that Paula made during the four month training period that was not only unwelcome but verbally abusive. I established a prima facie case because I was the only African American woman at the field office besides Paula. I was treated horribly because my skin tone, accent, gender, age, and national origin. This should be enough, including the witness testimonies stating that Paula did question me regarding my marital status and other factors during the training period and made fun of me during training. I was not accepted as an individual because I did not fit in the group because of my skin tone, national origin and accent. Blake Provost and Sam Gaskamp indicated in the report that although he did not recall anything, Paula changed after I reported her to Terry Richter. I am no longer working at the OCC because I was terminated, however, the trainees still work at the OCC with Paula so I did not expect them to be honest. They never said it didn't happen or it wasn't said they simply stated they don't remember or recall, or it's not their business. These statements do not corroborate with the allegation presented.

Paula Murriel and Terry Richter presented conflicting statements on their complaint file and the counselor's report regarding the mixed babies comment. This not only shows corruption, but it shows embellishment and deception. I will take a polygraph test to prove discrimination occurred and you also can subpoena the video footage as the agency has camera all over the office that will corroborate my allegation of discrimination. Terry Richter and Paula Murriel conspired to bring me down after acknowledging that I reported the discrimination claims to human resource and the union representative Chariss Hayes. Ms. Chariss Hayes provided human resources with documents including a request for transfer to another training team at another location (Houston) because of the discrimination I endured during my employment at the OCC. I made a journal of all the discrimination that occurred under the direction of the union member. As I faced discrimination, humiliation, and criticism regarding my skin tone, accent, professional dress code, and facial features I remained poised, dignified and quiet during my employment. The trainees indicated that Paula felt disrespected that I spoke to Terry Richter behind closed doors and she often had a bad mood.

Natasha Lubin v. Steven T. Munchin US Dept of Treasury (Office of the Comptroller of the Currency), Agency

• • •

I spoke to the banker after Paula agreed that I could speak to him. She was already upset that day because she was having trouble with her newly purchase home. She took her frustration, anger and resentment towards me that day.  The banker even asked me if I was okay after she yelled at me. It is not unusual for Paul and Terry Richter to protect themselves by provided conflicting stories and embellishing the truth. People without integrity will lie to not only protect themselves but to cover up corruption and unjustifiable behavior.  Paula and Terry Richter have a close knitted relationship so I did not expect Terry to take my complaint seriously after I reported unfair treatment and disparaging comments made by Ms. Murriel. Ms. Murriel is the only African American woman at the field office besides me; however, the disparaging and discriminating comments were about my skin tone because I am a dark skinned female with an unusual accent according to her. According to the laws of discrimination, discrimination can be made by people with the same race. What differs between Paula and I is our skin tone and my accent. My skin tone is 3 times darker than hers and I am not originally from Texas. All the trainees are from Texas or near Texas while I'm from Miami, Fl. Not only was the comment was offensive in an office setting but it's inappropriate and evoke prejudice.  Paula eluded that I am from Africa because of my dark skin tone and that was offensive to people in Africa and myself as well. Paula boyfriend at the time is Germany American(Caucasian)  just like Terry Richter. Paula suggested that I get together with Corbitt Holloway (trainee) to make beautiful mixed babies. It was an appropriate offensive racist comment that caused emotional turmoil. I did not feel like she accepted me because of my skin tone, accent and professional attire. She wanted me to be with a Caucasian so I can have mixed children. She wanted me to be like her. I will take polygraph test. Please administer a polygraph test for Paula and I, and I guarantee you that she will fail. The agency is responsible for abuse of authority and position and each complaint should be taken seriously especially if it creates hostility, emotional turmoil, and unwelcome abusive comments by a superior. This should not be tolerated at any capacity regardless of employment tenure. During my employment at the OCC, my weight, sense of worth, dignity, and emotional well-being was impacted by the unscrupulous treatment.


Please view all cameras during my time of employment to corroborate my statement since Terry, Paula and Jennifer are provided conflicting stories and embellishing the truth for personal gain. I asked that the OFO subpoena all video tapes at the office. The attorneys, Terry, HR, and US Treasury weren't there to experience and witness the verbal abuse made by my supervisor. My word is my bond because all the trainees are afraid going against Terry and

Natasha Lubin v. Steven T. Munchin US Dept of Treasury (Office of the Comptroller of the Currency), Agency

• • •

Paula. I took an oath to myself and with agency to speak truth and maintain integrity at all times no matter what.


Terry Richter told the counselor to tell me that he would cancel the charge back once I dropped the complaint and not file a formal complaint with the US Treasury. Terry Richter knew that he was wrong that's why he wanted me to not file the complaint with the Treasury.

Mr. Robinson did not read the entire investigative file and the counselor's report to make a fair unbiased decision based on facts and the applicable law. I know the attorney is trying to protect the agency but we should not circumvent the laws of the founders for personal gain. It is the responsibility of all to read the totality of all documents. I believe principle, law and integrity should be the foundation not protecting misuse of authority/abusing power.  Management is known to embellish facts that why I ask that you view all cameras at the Longview, TX location to make an assessment of the Team lead and Terry's interaction with me. The truth is in the recording and my documents I presented. Also, I provided a letter from the union that was sent to human resources two days before I was terminated. It is the agency's moral obligation to seek truth above tenure or position.

Color Discrimination can occur between persons of the same race or ethnicity.  Paula, a lighter complexioned African American has frequently made offensive egregious comments and jokes about my skin color ( dark complexioned) and accent (Haitian American), causing me anxiety, lose sleep, emotional turmoil, tears, lose focus and dread coming in to work each day.  Color was a motivating factor  in how was I treated during the training period. I was the only dark skinned complexioned Haitian American with an unknown accent.  The male trainees were Americans with southern accent. I asked Paula in April in Longview, TX conference room why does she treat the males trainees better than me, she stated that she was more comfortable with them then me.

Negative stereotypes, assumptions and biases were directed at me on more than one occasion.

The decision was driven by racial animus. Paula stated at a bank Exam jokingly that "Men don't like dark chocolate women" while looking at me and laughing. Referring to a person as blackey because of their skin tone also indicates stereotyping. This comment is a stereotypical thinking and bias against dark skin complexion women. These statements reflect racial stereotyping and bias. Assisting a Caucasian trainee Sam Gaskamp and not assisting me when I ask for help is depriving me of opportunity to learn by segregating based upon color preference. This shows racial preference. Paula boyfriend is Caucasian and she stated that she feels more comfortable

Natasha Lubin v. Steven T. Munchin US Dept of Treasury (Office of the Comptroller of the Currency), Agency

• • •

with Sam (a white trainee) then me (an African American). Race related treatment and egregious statements orally( offensive slurs) made by Paula were patently biased and inappropriate were not only unwelcome but it showed racial preference and bias. Paula sat side by side with Sam but refused to sit next to me including helping me. These race related attitudes, slurs, comments, treatment and work environment created hostility. It is unwise to presume as a matter of law that human beings of one definable group will not discriminate against members of their group.

I was Paula's competition from her point of view because she and I are the only African American females at the Longview, TX office location. Paula said to me two weeks after I began employment  because I am older than her I can be over her one day. This comment was said in the break room at a bank exam. This fear of me being over her one day could be another motivating factor of disparate treatment and why her aim was to get me fired. She saw me as a threat.

My journal/recollection shows that because of the harassment, I suffered headaches, humiliation, insomnia, light headedness, social impairment, difficulty communicating with people due to demeaning jokes, increased agitation, shortness of breath, anxiety, prolong menstrual cycles(lasting a month) decreased in professional standing and problems with focusing, thinking and a decrease in appetite. My sense of well-being, confidence, happiness declined as a result of the humiliation, teasing, racial slurs/comments, racially offensive jokes aimed towards me as indicated in my rebuttal letter on 03/10/2016. I have never been so humiliated, chastised, insulted and berated in my life for my skin color and accent. Although it happened in 2016, it left a stained/hole in my heart. It was a very painful, depressing, dark, melancholy, stressful, and humiliating five months. I believe the law is clear and straightforward; everyone should be treat fairly and respectfully no matter the status or tenure. A supervisor/superior should be just as accountable for misusing/abusing their power because it's the law. I reported discrimination and it was ignored and I was retaliated as a result for speaking the truth.

Statistical evidence:

In addition Paula said to me when I told her Jennifer was condescending and her comments were offensive. Paula said because we are African American females we will be targeted and we need to be careful with the Caucasian.  A former employee told me a week before leaving the OCC that she was discriminated against by her trainer because her husband is a pastor. She was with OCC for only one year. I told her if she reported incident, she said No because she feared termination and that's why she decided to leave altogether because the trainees can get away

Natasha Lubin v. Steven T. Munchin US Dept of Treasury (Office of the Comptroller of the Currency), Agency

• • •

with anything.  The Longview, TX office has an enormous rate of turnover because the trainees are unprofessional, bias, and do not respect individuality and diversity in the office.

The employer's credibility:

Human Resource: I reported disparate treatment on 3/10/17, I contact HR Jessie Riley said no one goes over the ADC(RMO). HR did not take complaint seriously thus violating the law. Please listen to phone recording in March 2016. Witness not credible.

Terry Richter (RMO/ADC) I reported disparate and unfair treatment including disparaging comments made by Paula but Terry Richter said he did not believe me because he knew Paula not me. This is not a credible witness because he did not take complaint seriously nor did he try to resolve the matter thus violating the law. This witness is not credible, he provided conflicting statements on IF and counselors report regarding termination and his knowledge of protected activity which shows embellishment and deception.

Paula Murriel (Trainer) Paula is the defendant/tyrant who committed the act so therefore she isn't a credible witness. Paula provided conflicting statements on the IF and counselor's report, which shows embellishment and deception. This is not a credible witness.

Andreas Pena (Jennifer's husband) conflict of interest as Jennifer is an Analyst while Andreas Pena is a bank examiner. Andres Pena stated out loud so I can hear that the "trainees brought voodoo to this office and we need to get out". Please review the Longview, TX office surveillance video type dated May 2016 to corroborate my statement of Mr. Pena's deception in his testimony.

Trainees (Sam Gaskamp, Blake Provost, & CJ Holloway) witnessed some of the disparate and unfair treatment, however, they fear termination. Sam and Blake indicated in their testimonies that Paula changed when I scheduled a meeting with Terry Richter. Sam said the bank incident was a misunderstanding and Paula was upset. All trainees would go to lunch with Paula all the time so there is slight bias in their testimonies. CJ Holloway lives in the same complex with Paula and he would do outside work for Paula so he's not a credible witness.

Please review the totality of the evidence presented to determine if the reason given by the employer's action was justified.

Natasha Lubin v. Steven T. Munchin US Dept of Treasury (Office of the Comptroller of the
Currency), Agency

• • •

Civil Rights Violation made by Agency:

- **Ancestry:** Employment discrimination because of racial or ethnic ancestry.
  Discrimination against a person because of his or her ancestry can violate Title VII's
  prohibition against race discrimination. Note that there can be considerable overlap
  between "race" and "national origin," but they are not identical.[14] For example,
  discrimination against a Chinese American might be targeted at her Asian ancestry and
  not her Chinese national origin. In that case, she would have a claim of discrimination
  based on race, not national origin.

- **Physical Characteristics:** Employment discrimination based on a person's physical
  characteristics associated with race, such as a person's color, hair, facial features, height
  and weight.[15]

- **Culture:** Employment discrimination because of cultural characteristics related to race or
  ethnicity. Title VII prohibits employment discrimination against a person because of
  cultural characteristics often linked to race or ethnicity, such as a person's
  name,[18] cultural dress and grooming practices,[19] or accent or manner of speech. For
  example, an employment decision based on a person having a so-called "Black accent,"
  or "sounding White," violates Title VII if the accent or manner of speech does not
  materially interfere with the ability to perform job duties.

- **Perception:** Employment discrimination against an individual based on a belief that the
  individual is a member of a particular racial group, regardless of how the individual
  identifies himself. Discrimination against an individual based on a perception of his or her
  race violates Title VII even if that perception is wrong.

The EEOC mishandled this case by not reviewing it thoroughly due to high case load; I feel they
overlooked compelling evidence that would support my case. If you look at the evaluation, it
doesn't say I didn't complete my work nor does it say I have poor work performance. Also, the
document that was given to me on 03/10/2016 was not a performance evaluation, it was an
account of the event that happened that day. I also included a rebuttal indicating that they were
laughing and poking fun at me, which was ignored. Additionally, the RMO stated that I was
terminated due to interpersonal issues with trainer Paula Murriel at the time of termination. He
never mentioned poor performance or work ethics. Also, there are cameras in every room, if I
was sleeping during training from 02/10/18-5/20/18 please subpoena the videotape to
substantiate. I never slept during training, I don't sleep during the day only at night. Since the
ongoing discrimination, I was sleep deprived but I never fell asleep because I couldn't sleep, I
was in constant state of fear, pain, and misery. Also, if the ongoing abusive conduct wasn't
severe why did I go to the bathroom every other day to cry after being teased, poked fun, and
humiliated at. Why did the doctor give me a prescription for my prolong period lasting for over
three weeks due to high stress level and unstable hormone. Why did the doctor offer me an
antidepressant pill like Zoloft? My mood, hormone, mind, heart, body and soul was affected by

Natasha Lubin v. Steven T. Munchin US Dept of Treasury (Office of the Comptroller of the Currency), Agency

• • •

Ms. Murriel mistreatment. Exploitation, misuse of power/position, retaliation, bribery, prejudice, malfeasance, and ruthless tyranny should not be tolerated by any one per LAW.

I am proceeding with a civil suit due to EEOC and Department of Treasury mishandling this case without the proper due diligence/investigation. In addition, I would like each party to be summoned to court to face judge under oathe. Perhaps people may demonstrate dignity and truth while under oath. My testimony including the people that were there during the event should bring forth justice/truth. I should have taken this to court but I was told by the EEO counselor at the agency its better and quicker turnaround time to make the EEOC decide on the case. I was misinformed again but I take responsibility for listening to the agencies staff. I want Paula, Terry(RMO), Sam, Blake, and Corbit Joseph to take the stand since they heard everything including made jokes towards me. Also, I want my doctor, HR, union Member, EEO counselor, my sister, my friend, and my mother to take the stand if possible. Most judges are able to catch a liar and snake based on testimony and body language. I can recall all events and would gladly take lie detector to prove discrimination occurred and my horrible experience is well before the evaluation. I lost everything due to this mistreatment, my 401K, life savings, job, sense of respect, confidence, happiness, and increase debt. I had to rebuild my life as a result of abuse of power and position.

The decision on the appeal dated 10/18/18 shows that the complainant, Natasha Lubin, a/k/a Hyo L…,,which is incorrect. My full legal name has always been Natasha Lubin only. I do not know where a/k/a Hyo L is coming from. This shows that the commission not only did not thoroughly review all documents but they made a huge blunder on my name. What is a/k/a Hyo L?

Please refer to case Pamela Scott vs US Postal Service Appeal#0720070044 in EEOC website. Discrimination claim, terminated during probationary period.

Best Regards,

Natasha Lubin

Natasha Lubin v. Steven T. Munchin US Dept of Treasury (Office of the Comptroller of the Currency), Agency

● ● ●

A copy of the appeal was sent to the director, office of civil rights and diversity by certified mail on 11/1/2018